659 So.2d 586 (1995)
James E. BOLING
v.
A-1 DETECTIVE & PATROL SERVICE, INC.
No. 91-CA-00979-SCT.
Supreme Court of Mississippi.
August 3, 1995.
*587 Davey L. Tucker, Jackson, Guy N. Rogers, Jr., Pearl, for appellant.
Gregg A. Caraway, Mitchell McNutt Threadgill Smith & Sams, Jackson, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the Court:
James E. Boling appeals a May 22, 1991 judgment of the Hinds County Circuit Court reflecting the jury's decision to award him $2,000.00 in damages resulting from an alleged error in a surveillance report prepared by the A-1 Detective and Patrol Service, Inc. Finding that there is no merit to his contentions that he had proven a prima facie case of fraud against the detective agency, that punitive damages should have been awarded, and that the jury's award of damages was so thoroughly inadequate as to warrant an additur, we affirm the judgment of the court below.

I.
After six and one-half years of marriage, James Boling's wife, Cynthia, left him on September 3, 1987. She took their young daughter, Ashley, with her. Shortly thereafter, she filed for divorce. In October, 1987, Boling contacted A-1 Detective Service to follow his estranged wife, whom he thought was having an affair with another man. He testified that he "wanted to find out what was going on with her to protect myself" in the divorce action. Wiley Greer, President of A-1, assigned the job to an employee, Jerry Mullins, and a part-time investigator, Dave Stott.
On October 24, 1991, a Saturday night, Stott began surveillance of Cynthia Boling's apartment in the early evening. Around 8:10 p.m., he observed a man emerge from the stair landing by Mrs. Boling's apartment, come down the stairs, get into a white car and then go back upstairs. Stott noted the license plate number and had Mullins run a tag check on the vehicle. It was determined that the car belonged to Mrs. Boling's neighbor, Paul Howell. He was observed leaving his own apartment the next morning.
*588 At Boling's request, Stott and Mullins met with Boling at A-1's office around 7:00 a.m. on Sunday morning. Stott told Boling that a mistake had been made and the man he had observed was only a neighbor. Boling left the A-1 office with a copy of the uncorrected preliminary surveillance report that had been prepared the night before. By Monday, October 25, Boling, too, had had a friend run a license check and determined that the man in question was just the next door neighbor and not someone who had spent the night in Mrs. Boling's apartment.
Around midnight that Saturday night, Boling had shown up in Mrs. Boling's parking lot. He and Stott observed Mrs. Boling talking to a man on her balcony. Stott testified that Boling reported the next morning that he called his wife and discovered that the man on the balcony was a co-worker who had stopped by for a visit.
Boling denies that he was told that there was a mistake in the report or that he received an amended report. He admitted that he wasn't sure that the report was false, but thought there were some flaws in it. He further stated that on Tuesday, he talked with Mullins on the telephone in a conversation taped without Mullins' knowledge or consent, who confirmed that Paul Howell was merely Mrs. Boling's next door neighbor. Greer testified that he also spoke that day with Boling, who became quite irate upon learning that A-1 did not have any proof that his wife had spent Saturday night with anyone.
Realizing that the reports from A-1 were not going to assist him in his upcoming divorce case, Boling then hired the Pendleton Detective Agency to conduct further surveillance on his wife.
Boling filed a complaint against A-1 in the Circuit Court of the First Judicial District of Hinds County on September 1, 1988. He charged that in allegedly misreporting that a certain Paul Howell had spent the night with his estranged wife, employees of the detective agency had acted in a manner which was "malicious, fraudulent, negligent, wrongful, and in reckless disregard of the rights of the Plaintiff and contrary to Defendant's duties to Plaintiff... ." Boling sought damages for mental and physical stress ($50,000.00); inconvenience and loss of time ($5,000.00); doctor and drug expenses ($200.00); his fee paid to A-1 ($473.00); punitive damages and attorney fees ($50,000.00); more attorney fees ($1,500.00); and expenses and costs of litigation and investigation (not to exceed $5,000.00).
A jury trial was held on May 14 and 15, 1991. The circuit court granted A-1's motion for a directed verdict on the issue of punitive damages. On the liability issue, the jury found for Boling and awarded damages in the amount of $2,000.00. Boling then filed a motion for j.n.o.v. on damages only, or, for condition of additur, which was denied by the circuit court on September 6, 1991.
On appeal, Boling now contends that he proved the elements of fraud by clear and convincing evidence, that the trial court erred in refusing to instruct the jury regarding the issues of punitive damages, attorney fees and costs of litigation, that he should have been granted an additur; and the jury's award of damages is so inadequate as to evidence confusion, or bias passion and prejudice, and is contrary to the overwhelming weight of the credible evidence.

II.
Having granted A-1's motion for a directed verdict on the issue of punitive damages, the circuit court ruled that Boling could introduce no evidence regarding attorney fees as an element of damages. Boling does not challenge these rulings. Instead, he merely argues that the circuit court erred in refusing to grant the requested Instructions Nos. P-5 and P-6, on the issue of punitive damages, and in striking language from Instruction No. P-2, which referred to punitive damages, attorney fees and costs of litigation.
We have held that "[a] plaintiff is entitled to punitive damages only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others." Valley Forge Insurance Co. v. Strickland, 620 So.2d 535, 540 (Miss. 1993), cert. denied ___ U.S. ___, 114 S.Ct. 635, 126 L.Ed.2d 593 (1993), quoting Strickland v. Rossini, 589 So.2d 1268 (Miss. 1991). Punitive *589 damages are to be assessed only in "extreme cases," and since they are intended "as an example and warning to others, `they should be allowed only with caution and within narrow limits.'" Beta Beta Chapter of Beta Theta Pi Fraternity v. May, 611 So.2d 889, 894 (Miss. 1992), quoting Consolidated American Life Insurance Co. v. Toche, 410 So.2d 1303, 1304-1305 (Miss. 1982); Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 362 (Miss. 1992). See also James W. Sessums Timber Co. v. McDaniel, 635 So.2d 875, 881 (Miss. 1994) (punitive damages appropriate in cases of gross negligence).
At best, we find that Boling has proven a case of simple negligence. The evidence in the record does not suggest that A-1 acted either wilfully or maliciously in reporting its findings to Boling. Nor does it suggest that the detective agency was grossly negligent. Further, as A-1 points out, even if, assuming arguendo, the facts supported a finding that A-1 had acted fraudulently, that would not necessarily warrant instructing the jury on punitive damages. As we stated in Gardner v. Jones, 464 So.2d 1144 (Miss. 1985), "[p]unitive damages do not follow as the day the night every finding that a defendant has been guilty of fraud. Though fraud is frequently an ingredient of an award of punitive damages, it is clear from our cases that more is required." Id. at 1148.
There being no basis for punitive damages and no applicable statute or contractual provision allowing for attorney fees in this case, Boling should not have been allowed an instruction on the issue of attorney fees and costs. Greenlee v. Mitchell, 607 So.2d 97, 108 (Miss. 1992); Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss. 1987). Moreover, since the circuit court had already directed the verdict on punitive damages in favor of A-1, there was no evidentiary basis for instructing the jury on the issue of punitive damages. Accordingly, we find no merit in Boling's argument.

III.
Boling, arguing that A-1's mistaken first impression that Paul Howell was a paramour of Cynthia Boling rather than an innocent next door neighbor amounts to fraud, contends that the circuit court should have found that there existed a sufficient basis upon which to instruct the jury on the issues of punitive damages. He asserts that under the facts of the case, a reasonable juror would have found A-1 guilty of fraud. A-1, on the other hand, counters that Boling's argument is a belated attempt to raise a new cause of action in pursuit of punitive damages. M.R.C.P. 9(b) requires that when pleading fraud, the circumstances of the alleged fraud shall be stated with particularity. While Boling pled the circumstances of the incident with substantial detail, he did so only in the larger context of charging that A-1's actions were "malicious, fraudulent, negligent, wrongful, and in reckless disregard of the rights of then Plaintiff ..." and focused this argument on A-1's alleged breach of duty. The Comment to Rule 9(b) states that the "so-called `textbook' elements of fraud" need only be pleaded generally. Boling made no effort to do so. His concern was mainly negligence.
Upon reviewing Boling's jury instructions, we find that no instructions on fraud were either requested or denied. Boling, however, argues that the circuit court's granting of Jury Instruction No. P-16 was sufficient instruction on A-1's allegedly fraudulent conduct and left the court "duty bound" to grant a punitive damage instruction. After review of this instruction, one could hardly say that the jury was instructed on fraud and a punitive damage instruction should have been granted. That instruction, however, provided only that:
If you find from a preponderance of the evidence in this case that
1. Defendant knew or had reason to know that Defendant provided a false report to Plaintiff, James E. Boling, and
2. Defendant failed to use reasonable care under the circumstances to avoid injuring Plaintiff by providing a false report to Plaintiff, James E. Boling, and
3. Defendant's failure to use reasonable care was the sole proximate cause or proximate contributing cause of Plaintiff's, James E. Boling, injuries and damages, then your verdict shall be for the Plaintiff.

*590 However, if you believe that the Plaintiff has failed to prove any one of these elements by a preponderance of the evidence in this case, then your verdict shall be for the Defendant.
Fraud is never to be presumed or inferred, but must be proven by clear and convincing evidence. Nichols v. Tri-State Brick and Tile, Inc., 608 So.2d 324, 330 (Miss. 1992); Singing River Mall v. Mark Fields, Inc., 599 So.2d 938, 945 (Miss. 1992). The elements of fraud are: a representation; its falsity; its materiality; the speaker's knowledge of its falsity or ignorance of its truth; his intent that it should be acted upon by the person and in the manner reasonably contemplated; the hearer's ignorance of its falsity; his reliance on its truth; his right to rely thereon; his consequent and proximate injury. Nichols, 608 So.2d at 330; Singing River Mall, 599 So.2d at 945. The evidence in the record shows that a preliminary representation was made to Boling that a man had been seen entering his estranged wife's apartment building. It soon was determined that the man was a next door neighbor and not a visiting paramour. Boling disputes the testimony of two A-1 employees that he was told of the mistaken identity. Nevertheless, Boling's own license check on the car which the man was seen entering confirmed the mistake and challenged the reasonableness of Boling's reliance on A-1's preliminary report. Most important, there is no evidence that A-1 intended to provide Boling with false information or to induce him to act thereon. Finally, the evidence suggests that the ensuing stress and anxiety Boling claims to have suffered from A-1's failure to produce a paramour was largely attributable to the general circumstances of his separation and divorce. We find, therefore, on the issue of fraud, that the evidence in the record does not support the elements of the tort of fraud.

IV.
Boling contends that the jury's $2,000.00 award of damages is so inadequate that the circuit court should have found that the jury "was confused, or influenced by bias, prejudice or passion." He seeks an additur for actual damages of $13,500.00, punitive damages of $15,000.00, attorney fees and costs in the amount of $15,000.00, for a total of $43,000.00. We have held that "[a]wards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Rodgers v. Pascagoula Public School District, 611 So.2d 942, 945 (Miss. 1992). The burden is on the injured party to prove the damages suffered. Rodgers, 611 So.2d at 945. We must consider the evidence presented in a light most favorable to the defendant, giving him the benefit of all reasonable inferences that may be drawn. Id. See also Odom v. Roberts, 606 So.2d 114 (Miss. 1992).
Boling testified that he paid A-1 $677.75 for two nights of surveillance. In addition he claims nearly $3,000.00 in actual damages for the additional expenses he incurred in seeking treatment for the anxiety-related illnesses he attributes to his experience with A-1. The evidence does not support his argument that these expenses, pain and suffering, lost income and other damages claimed were all directly attributable to A-1's failure to find a man in Cynthia Boling's apartment on October 24, 1987. Boling, himself, conceded that his problems stemmed from the circumstances surrounding his separation and divorce. Drs. Donald Guild and Gerald O'Brien, from whom Boling sought treatment, testified that Boling's anxiety and depression were related to a variety of circumstances in addition to his experience with A-1. Boling's mother indicated that he had had problems since the separation and the incident with A-1 was "the straw that broke the camel's back." His wife maintained that Boling had been unreasonable and unstable since the beginning of their marriage, and more so after they separated.
Looking at the evidence in a light most favorable to the defendant, A-1, the jury quite reasonably could have found that the damages alleged were attributable to factors other than the incident with A-1. Boling did not meet his burden of showing otherwise. We cannot say, therefore, that the jury's verdict was against the weight of the evidence *591 or the result of bias, passion or prejudice.
Pursuant to Miss. Code Ann. § 11-1-55 (1991), this Court is empowered to impose an additur when we find that the damages awarded by the jury are inadequate. However, "[a]dditurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Rodgers, 611 So.2d at 945. An additur, therefore, is only warranted when the award was the result of bias, prejudice or passion, or if the damages awarded are contrary to the overwhelming weight of the credible evidence. Id. at 944. Under the facts of this case, we do not find an additur to be appropriate.

VI.
The circuit court correctly denied Boling's motion for j.n.o.v. on damages only, or, for condition of additur. Notwithstanding his failure to specifically raise the issue of fraud in his complaint and to seek instructions on the issue, the evidence in the record does not suggest that A-1 acted fraudulently. Likewise, notwithstanding the circuit court's grant of a directed verdict in favor of A-1 on the issue of punitive damages, the evidence in the record does not support an instruction on punitive damages. Finally, although Boling complains that the jury's award of $2,000.00 was inadequate and seeks an additur, the verdict does not appear to have been the result of bias, prejudice, or passion, but reflects the weight of the credible evidence, which suggested that Boling's problems arose from the circumstances of his separation and divorce, not just from the realization that A-1 had been unable to prove that his estranged wife was having an affair with another man. Judgment is affirmed.
JUDGMENT AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
HAWKINS, C.J., concurs in result only.