733 So.2d 308 (1998)
Michael L. McGEE and Sherry B. McGee, Appellants,
v.
Thomas L. SWAREK, Appellee.
No. 97-CA-00716COA.
Court of Appeals of Mississippi.
December 8, 1998.
Rehearing Denied March 9, 1999.
Certiorari Denied May 20, 1999.
*309 Roy O. Parker, Tupelo, Attorney for Appellants.
Walter W. Teel, Alfred R. Koenenn, Gulfport, Attorneys for Appellee.
Before McMILLIN, P.J., and COLEMAN and SOUTHWICK, JJ.
McMILLIN, P.J., for the Court:
¶ 1. This case comes before the Court as an appeal from a grant of summary judgment in favor of the defendant in an action sounding in fraud. The appeal suggests that summary judgment was inappropriate because there are disputed issues of fact that, if resolved favorably to the plaintiffs, would establish their right to recover in this case. We conclude that the judgment of the trial court was correct and we, therefore, affirm.

I.

Facts
¶ 2. The facts of this case follow a somewhat tortured course to bring us to the claim now advanced by the plaintiffs. We will attempt to relate them as succinctly and clearly as possible. It might prove helpful to resist the urge to anticipate the path of the narrative that follows since it takes some unexpected turns.
¶ 3. The plaintiffs in the trial court in this case were Michael McGee and his wife, Sherry McGee. Hereafter, Michael McGee will be referred to simply as "McGee" since he, and not Sherry McGee, is the principal player in the drama. This case had its origins in a personal injury suffered by McGee at work, but it is important to keep in mind that the case now before this Court is not a personal injury action. As will appear more fully hereafter, McGee's claim for personal injury has been finally resolved in another proceeding.
¶ 4. McGee was employed by the defendant, Thomas Swarek, as a farm laborer. In the fall of 1992, McGee suffered a devastating injury while at work that resulted in the loss of one leg and a portion of his lower torso. McGee was not a covered employee under Mississippi Workers' Compensation laws. Rather, his sole remedy was an action in negligence. He asserted a claim for recovery against Swarek, his employer, asserting that his injury was due to the negligence of a fellow employee, *310 thus rendering Swarek vicariously liable under the doctrine of respondeat superior. Swarek was covered under a liability insurance policy issued by State Farm Fire and Casualty Company (hereafter "State Farm") with policy limits of $1,000,000.
¶ 5. The McGees retained the services of Roy O. Parker, an attorney, to represent them in pursuit of their damage claims arising out of McGee's injury. (Mrs. McGee's role in this case arises out of her belief that she had a separate loss of consortium claim based on her husband's personal injuries.) In March 1993, Parker had a telephone conversation with Swarek. The call was initiated by Parker, but was apparently in response to an earlier unsuccessful attempt by Swarek to contact Parker. Parker, without Swarek's knowledge, made a recording of the telephone conversation. A written transcript of the conversation was filed as an exhibit to the complaint in this case. A review of that conversation indicates that Swarek's principal concern was that the claim asserted by Parker exceeded the limits of the State Farm policy and he feared that State Farm might be unwilling to settle the claim at or below the policy limits, thus exposing Swarek to potential personal liability. Parker's principal concern, on the other hand, appeared to be whether there were means that could be employed to secure payment of the entire $1,000,000 policy limits since State Farm was suggesting that McGee's damages were subject to substantial reduction because of evidence that McGee's own negligence contributed to his injury. Parker and Swarek discussed possible strategies to bring pressure to bear on State Farm to settle the case within policy limits. In the course of the conversation, Swarek made certain statements that indicated to Parker his desire to put McGee back to work but that State Farm representatives were instructing him not to do so. Upon learning this fact, Parker stated that he intended to file an additional suit charging State Farm with malicious interference with contractthe contract being the at-will employment contract between Swarek and McGee. Once again, patience in following this narrative is involved because, even though this second suit was, indeed, filed, neither is it the case now before this Court.
¶ 6. The facts indicate that the contract interference suit was filed by Parker shortly after his conversation with Swarek. The exact date is unclear, but it was during the month of March 1993. Some eight months later, in January 1994, all interested parties reached an agreed settlement of McGee's personal injury claim. In the settlement, State Farm paid the entire policy limits of $1,000,000 and Swarek made no additional contribution to the settlement from his own assets. The record also indicates that, despite Swarek's alleged statements to Parker concerning State Farm's opposition to the rehire of McGee, Swarek did put McGee back to work at a higher salary the next month after the contract interference suit was filed.
¶ 7. At some point, the separate contract interference suit was removed to federal court and in late 1994, the federal district court judge presiding over the case granted summary judgment in favor of State Farm. In support of its summary judgment motion, State Farm procured an affidavit from Swarek stating that State Farm had not, at any point, attempted to interfere with Swarek's decision to put McGee back to work except to counsel him that it would be prudent to have a doctor's release before doing so. These provisions of Swarek's affidavit are, beyond question, at odds with statements made by Swarek in his telephone conversation with Parker. The federal district judge, in explaining its ruling, made it clear that the court was relying in part on Swarek's affidavit to conclude that there were no disputed issues of fact to support McGee's contract interference claim.
*311 ¶ 8. Upon the dismissal of McGee's contract interference suit against State Farm, McGee commenced the present litigation. This Court's best interpretation of the cause of action advanced by McGee in this claim is as follows: McGee reasonably believed that his personal injury claim against Swarek was worth substantially in excess of $1,000,000 and he was reluctant to settle the case for such a discounted sum. However, in reliance on Swarek's telephonic comments to his attorney, McGee was falsely led to believe that he had a separate claim against State Farm for maliciously interfering with his employment contract with Swarek. McGee reasonably believed, based on Swarek's statements, that this suit would provide an alternate source of funds that could stand in the stead of those additional amounts he might expect to recover in the personal injury suit if he declined the $1,000,000 settlement offer. In reliance on the belief that Swarek would be a credible and persuasive witness to establish State Farm's tortious ultimatum that McGee not be put back to work, McGee "reluctantly" agreed to settle the personal injury claim for the policy limits. This settlement benefitted Swarek by removing any risk to him that the McGees might recover a judgment against him that would exceed available liability insurance coverage. The fact that Swarek altered his story after the settlement of the personal injury case to say that State Farm had not, in fact, attempted to interfere with Swarek's decision regarding McGee's continued employment demonstrated that Swarek had, by his earlier contrary assertions to McGee's attorney, succeeded in tricking McGee into settling the personal injury suit for less than its actual worth. These actions constituted an actionable fraud perpetrated by Swarek on McGee for which he should be made to respond in damages.
¶ 9. The trial court granted summary judgment in favor of Swarek and this appeal ensued. We affirm the judgment of the trial court, though for different reasons than those advanced by that court.

II.

Discussion
¶ 10. Our review of a grant of summary judgment is de novo. Stonecipher v. Kornhaus, 623 So.2d 955, 960 (Miss.1993). We afford no deference to the trial court's decision. Rather, we review the entire record on appeal to determine whether, in the view of this Court, a grant of summary judgment is appropriate and only if we independently arrive at that conclusion that summary judgment was warranted will we affirm. Id.
¶ 11. Summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure is appropriate when the court considering such a motion reasonably concludes that there are no disputed issues of material fact and that, in view of those undisputed pivotal facts, the moving party is entitled to prevail as a matter of law. M.R.C.P. 56; Yowell v. James Harkins Builder, Inc., 645 So.2d 1340, 1343 (Miss.1994). In the case where the defendant moves for summary judgment and, by proper affidavits or some other means contemplated by the rule, asserts that there is no credible evidence to establish one or more of the essential elements of the plaintiff's claim, the plaintiff may not simply rely on pleadings to the contrary or upon unsupported assertions that such proof exists. Instead, in responding to the defendant's motion, it is incumbent on the plaintiff to come forward and affirmatively demonstrate that the plaintiff possesses and will be able to present at trial admissible competent evidence that would support the plaintiff's cause of action. MST, Inc. v. Mississippi Chem. Corp., 610 So.2d 299, 304 (Miss. 1992).
¶ 12. With that standard in mind, we now turn to McGee's theory of this case and those essential elements of his claim on which he must present evidence if he were to have a chance of prevailing at a trial. McGee has asserted a claim sounding *312 in fraud. In effect, he has alleged that he was fraudulently induced by Swarek to settle his personal injury claim for an amount substantially less than the claim's true worth in reliance on representations by Swarek that facts existed that would, with some reasonable measure of certainty, permit him to recoup those amounts sacrificed in the discounted personal injury settlementthat alternate source of recovery being a contract interference suit against State Farm that could be proved by Swarek's own testimony that State Farm directed him not to rehire McGee as a ploy to bring financial pressure on McGee and coerce him into a low settlement.
¶ 13. It is true that appellate courts are particularly reluctant to sustain summary judgments in matters involving allegations of fraud. See, e.g., Allen v. Mac Tools, Inc., 671 So.2d 636, 643 (Miss.1996); Cunningham v. Lanier, 555 So.2d 685, 687 n. 2 (Miss.1989). Nevertheless, realizing that fraud must be proved by the high standard of clear and convincing evidence, the Mississippi Supreme Court has affirmed a grant of summary judgment in a fraud case where the court was satisfied that a jury applying that high standard to the known facts could not reasonably find a fraud to have been committed. Haygood v. First Nat'l Bank of New Albany, 517 So.2d 553, 555-56 (Miss.1987).
¶ 14. The elements of a case of fraud include: (a) a material false representation, (b) the representation is known by the speaker to be false, (c) the representation is made with an intent to induce the unwitting hearer to act in reliance thereon, (d) the hearer does, in fact, act to his detriment in reasonable reliance on the false representation, and (e) the hearer suffers a consequent injury based on such reliance. Allen, 671 So.2d at 642; Boling v. A-1 Detective & Patrol Serv., Inc., 659 So.2d 586, 589 (Miss.1995).
¶ 15. The evident problem we find with McGee's claim is that there is, based upon our review of the record, no evidence that would support the proposition that Swarek's statements, at the time they were made to Parker (or at any time thereafter), were intended to serve as an inducement to McGee to settle his personal injury case for something less than its actual perceived value. In the one taped telephone conversation relied on by McGee, McGee's attorney had indicated a willingness to settle the case for the $1,000,000 policy limits before Swarek even mentioned in passing that he was being counseled by State Farm against returning McGee to work. Swarek's statement did not directly or indirectly pledge his cooperation in a contract interference suit against State Farm, nor did he suggest that his cooperation in such a suit, if one was to follow, was in any way contingent on McGee agreeing to settle the personal injury suit within policy limits.
¶ 16. Even if it could be shown with some certainty that the contract interference suit had a reasonable chance of success with Swarek's cooperation, that fact simply did not provide any incentive or inducement to the McGees to settle the separate personal injury claim for something less than its true worth. Taken in the light most favorable to the McGees as the non-moving parties, Swarek's representations to Parker regarding State Farm's demands were not factually accurate. However, not every spoken untruth is actionable as a fraud. It is only if that untruth was designed to, and did, in fact, induce the hearer to change his position in justifiable reliance on the untruth that it becomes potentially actionable.
¶ 17. In this case, it seems clear that, whatever the worth of McGee's contract interference suit might have been, that worth and the viability of that suit existed independently of McGee's separate and largely unrelated personal injury claim against Swarek. There existed no reason why McGee could not have pursued both claims simultaneously and with full vigor. He gained no prospect of advantage in the *313 contract interference suit by settling the personal injury claim and nothing in Swarek's brief comments in his recorded conversation with McGee's attorney could, by any interpretation, be seen as offering any inducement for McGee to settle the personal injury suit. It is clear from our review of the telephone conversation between Parker and Swarek that, rather than demonstrating Swarek's intention to induce Parker to settle McGee's claim for $1,000,000, the conversation shows that Parker was, without any inducement from Swarek and without any reliance on any comment made by Swarek, committed to accepting a settlement of $1,000,000 for McGee's injuries and that the only impediment to that result was State Farm's reluctance to pay that sum. Nowhere in the conversation does Parker even intimate that he or his client were intent on pursuing a recovery that might put Swarek's own personal assets at risk if the policy limits could be extracted from a reluctant State Farm.
¶ 18. There is the added problem that the record demonstrates that Swarek did, in fact, put McGee back to work with a $50 per month raise within a month of the time the contract interference suit was filed and that the personal injury suit was not settled until some eight months later. Thus, even if, by the most tortured stretching of Swarek's statements to Parker, it could be said that Swarek was attempting to induce McGee to settle his personal injury claim for less than its full value in exchange for Swarek's cooperation in McGee's separate contract interference suit against State Farm, it is beyond dispute that, by the time the parties got around to settling the personal injury claim, it had long since been established that State Farm's alleged interference with McGee's right to work for Swarek was ineffectual and, thus, not the basis of a viable lawsuit capable of producing damages of any appreciable sum. If, in fact, McGee, after returning to work for Swarek some eight months prior to the personal injury claim settlement, still relied upon Swarek's representations that State Farm was interfering with McGee's right to contract to work for Swarek, then, by definition, that reliance was patently unreasonable. Reliance on the alleged misrepresentations of the speaker must be reasonable in order to be actionable. Id. For that reason, if for no other, there simply is no logical basis to say that a jury could reasonably return a verdict for the McGees in this case based on the allegations of fraud relied on by the McGees.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
BRIDGES, C.J., THOMAS, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.