*1028
ON WRIT OF CERTIORARI

GRAVES, Justice, for the Court.
¶ 1. The chancellor set aside as fraudulent a deed from George Law, John David Law’s father, to Dolores Cluney (a.k.a.Delores), a woman believed to be his wife. After George Law died, it was discovered that Dolores Cluney was still married to her previous husband and that she had misrepresented herself to George Law and the court. Cluney appealed, and the Court of Appeals reversed and rendered, 6-3, finding that there was no evidence George Law conveyed the deed because he thought he was married to Cluney. In re Estate of Law, 852 So.2d 33 (Miss.Ct.App.2002). This Court granted certiorari to consider whether the Court of Appeals erred in deciding the case. We reverse the judgment of the Court of Appeals and affirm the chancellor’s judgment.
FACTS AND PROCEEDINGS IN THE TRIAL COURT AND THE COURT OF APPEALS
¶ 2. George Law met Dolores Cluney in 1992 a few years after his wife died. Clu-ney apparently lived near him in a small trailer and frequently borrowed items such as sugar, cigarettes or the telephone. In September 1992, Law, 73, and Cluney, 40, began living together, and in 1994 they participated in a marriage ceremony. On the marriage license application, Cluney represented herself to be Dolores Spadoni and indicated she had never been married. Shortly after the wedding, Cluney temporarily left Law and upon her return he deeded her a survivorship interest in his house and the surrounding one-acre lot. Law died intestate in 1999, and additional acreage he owned was inherited by his children. Law’s son, John David Law (John Law), was appointed administrator of the estate, and he petitioned the court to have the deed set aside and the marriage declared void.
¶ 3. Initially, John Law was not aware of Cluney’s bigamy. Cluney apparently tried to keep her past well-hidden even from the court, and the record reflects numerous blatant acts of perjury. With absolutely no cooperation from Cluney, who had been using the name Dolores Spadoni Law, the truth finally unfolded to reveal that she had been legally married to Raymond Clu-ney since 1972 and that she had represented herself in court documents to be the common-law wife of a second man, Timothy Wayne Johnson, whom she tried to have committed in 1992. The record reflects that this information only became known when a secretary for John Law’s attorney recognized Dolores and then remembered Johnson’s name from a lunacy proceeding. When first confronted with the truth, Cluney denied she was Dolores Cluney or that she was involved in the commitment action against Johnson, but, after being confronted indisputable evidence in a much later proceeding, she admitted she was the same person. Since Cluney’s marriage to George Law was void, the chancellor granted partial summary judgment and set aside all of her inheritance rights. At a later trial, the chancellor set aside the deed conveying the house and established a constructive trust for the benefit of the heirs. Cluney appealed, and the Court of Appeals reversed and rendered, finding the element of George Law’s reliance on the marriage in conveying the deed was not proven.
ANALYSIS
¶ 4. John Law asserts that the Court of Appeals erred in holding that the chancellor’s findings on the issue of reliance were manifestly wrong. As noted by the Court of Appeals, the factors for set *1029 ting aside a conveyance based on fraud have previously been set out by this court.
The elements of fraud, which must be proven by clear and convincing evidence, include: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker’s knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer’s ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.
Levens v. Campbell, 733 So.2d 753, 761-62 (Miss.1999). See also Spragins v. Sunburst Bank, 605 So.2d 777 (Miss.1992); Martin v. Winfield, 455 So.2d 762 (Miss.1984).
¶ 5. The Court of Appeals reweighed the evidence supporting the elements of fraud after finding that the chancellor quoted them in her opinion, but did not make a specific finding on all of them.
Proof of the elements of fraud must be by clear and convincing evidence. Id. at 761. We look to the record to determine what evidence existed on these factors. Though there are not findings on each factor, we can in a non-domestic relations case imply the findings on contested evidence necessary to uphold the decision unless there are indications that the chancellor was not applying the correct legal principles. Watson v. Lillard, 493 So.2d 1277, 1279 (Miss.1986)(“where the trial judge did not make specific findings of fact with regard to controverted issues, this Court will assume that the trial judge made all findings of fact that were necessary to support his verdict”). The chancellor set out these same factors as being necessary for proof of fraud, then found that fraud was proven. Therefore, we will imply the necessary findings if there is evidence to support them.
In re Estate of Law, 852 So.2d at 36 (¶ 10).
¶ 6. This Court found specifically in Watson:
That this Court will not disturb a trial judge’s finding on appeal unless it is manifestly wrong is a doctrine too well known to require citation. Moreover, in a case like the present one, where the trial judge did not make specific findings of fact with regard to controverted issues, this Court will assume that the trial judge made all findings of fact that were necessary to support his verdict.
493 So.2d at 1279 (citations omitted).
¶ 7. In the case sub judice, the chancellor found:
Based on the totality of the situation and the credible proof, Delores made a false representation as to her marital status and this representation was material to George deeding an interest in his real property to her. It was only after six months of a purported marriage that a deed was executed and the deed itself refers to Delores as George’s wife in two locations in the document.
Where one party (in this case, Delores) knows of an impediment to marriage and practices a fraud on the other, (George), there is no reason why this fraud should not vitiate the gift.
Accordingly, this Court grants the relief requested and does hereby set aside the transfer based on fraud from George and Delores to George and Delores to the following described property....
In granting this relief, the Court proceeds on the ground that the transaction should never have taken place, so that the title to this property would stand as if the transaction had never occurred.
On several occasions, Delores swore to tell the truth and proceeded to deny her *1030 marriage to Cluney. On one of these occasions, Delores was testifying before this Court and was given many opportunities to correct her misrepresentations.
This Court is called upon to fairly and impartially dispense justice on a daily basis relying upon information provided through testimony in open Court. Therefore, to rule otherwise in this cause would undermine the integrity of the entire Court system. Justice is founded upon the truth. Without this truth, our system would be a complete farce and cease to dispense justice. To allow Delores to realize personal gain after exhibiting a blatant disregard for the truth would be the epitome of injustice, exactly what this Court strives to avoid.
¶ 8. The trial court based its decision on the evidence as a whole and made a specific finding of reliance as noted in the language above. However, the Court of Appeals found that the chancellor did not make all findings of fact necessary to support the decision. The Court of Appeals then reanalyzed the elements of fraud and found sufficient evidence to support each element except for that of reliance. However, that analysis was improper.
To prevail on this element it must be shown that Law relied on the misrepresentation. Not every spoken untruth is actionable as fraud. It is only if that untruth by design and effect induced the hearer to change his position in justifiable reliance on the information. McGee v. Swarek, 733 So.2d 308, 312 (Miss.Ct.App.1998). There is no direct evidence that Law conveyed the residence only because he thought Cluney was his wife. Mr. Law’s sister testified that he had told her after the wedding that he would convey Cluney his house because he was not able to care for himself. The implication was that the conveyance was in exchange or in gratitude for the care that she was providing, which included cooking, cleaning, and other household chores. She also stated this:
Q. [D]id [Law] ever make the statement to you because Dolores is my wife, I am deeding her the property?
A. No, sir, no, sir.
Q. What did he tell you or why did he tell you he was deeding the property to Dolores?
A. Because — so that she would take care of him until he died.
Mr. Law’s aunt also testified. She stated that even before the ineffective ceremony took place, Law stated that he wanted Dolores to have his residence. There was no other evidence about Law’s intentions, state of mind, or other relevant fact in determining why he would want to convey the property to Cluney. The chancellor made a finding that the misrepresentation was material to Law. We interpret that finding as meaning that Law relied on the existing of the marriage in deciding the execute the deed. We accept that proof of reliance could be through inferences. That the marriage was not important to the decision also can arise from inferences.
In re Estate of Law, 852 So.2d at 38 (¶¶ 20-22).
¶ 9. The Court of Appeals used implications and inferences most favorable to Clu-ney in order to find that the element of reliance was not proven. That finding is erroneous. As previously addressed, the assumption is that the trial court made sufficient findings of fact to support its decision. Beyond that, the suppositions that the marriage was not important to the grantor’s decision and that the conveyance was consideration for household services *1031 defy other established standards of law, not to mention common sense and logic.
¶ 10. If the grantor had strictly intended to enter into a contract where in Cluney provided household services and he, in turn, conveyed his house to Cluney as payment, then he could have done that. He did not. The record reflects that the parties had an intimate relationship. The record also reflects that George Law was in bad health from the beginning of the relationship. He did not convey the house to her until after the marriage and then he conveyed it to his “wife,” as he believed her to be. Cluney admits and the record reflects that George Law had no knowledge of Cluney’s prior marriage. One cannot assume that George Law would have even been involved with Cluney at all had he known that she was still married, much less that he would have left his home to her.
¶ 11. Common sense dictates that a man involved in a serious intimate relationship with a woman that results in marriage is not going to leave a house to her and her heirs when she defrauded him and knew the marriage was invalid. If Cluney were to die, her heirs, including any lawful husband, would get the house. That lends itself to the argument that George Law was so gracious to Cluney for her household services that he would rather risk his home ending up in the possession of people the record establishes he did not even know rather than in that of his own children. The record also indicates that George Law’s eldest son actually helped his parents, George Law and the late Geraldine Law, purchase the house in question and that the younger siblings were raised there. The only reasonable inference is that George Law relied on the marriage in his decision to convey the house to Cluney and waited to execute the warranty deed after such took place more than a year later.
¶ 12. Additionally, the Court of Appeals sets out in the quote above that George Law’s aunt, Rozema Munn, testified that he told her before the “marriage” ceremony that he wanted Cluney to have the house. That lends itself even more to the implication that he relied on the marriage because he did not actually deed the house until after they were married. George Law’s sister, Katherine Bowen, who also testified that he was leaving the house to Cluney because she helped him, is close to Cluney and has been appointed to assist Cluney with her social security benefits and has an interest in land situated near the house. Both of these women also testified that they had no knowledge of Clu-ney’s marital status.
¶ 13. The record in its entirety lends credence to the likelihood that Cluney was determined to obtain George Law’s property. Before the truth was discovered, Cluney attempted to lay claim to additional property, including one year’s support of $12,000, as set out in her “widow’s” response. Additionally, she attempted to have the appointment of John Law as administrator set aside and herself appointed in his stead. Cluney attempted to defraud everyone, including George Law, his children, the court, even her own lawyer, for an extended period of time. Cluney’s actions were more than a mere misrepresentation.
CONCLUSION
¶ 14. Accordingly, we find that the trial court made sufficient findings of fact to support its decision, and the Court of Appeals erred in concluding otherwise. We reverse that the Court of Appeals’ judgment reversing the Chancery Court of Monroe County and reinstating the deed. In doing so, we affirm the judgment of the *1032 Chancery Court of Monroe County setting aside the fraudulent conveyance.
¶ 15. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED.
SMITH, C.J., WALLER, P.J., AND CARLSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J., AND IN PART BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.