963 So.2d 586 (2007)
Gregory M. JOHNSTON, Appellant Cross-Appellee
v.
John N. PALMER, Individually and Gulf South Capital, Inc., Appellees Cross-Appellants.
No. 2006-CA-00428-COA.
Court of Appeals of Mississippi.
August 21, 2007.
*589 Dennis C. Sweet, Jackson, attorneys for appellant.
Steven H. Smith, Benny McCalip "Mac" May, Jackson, attorneys for appellees.
Before LEE, P.J., BARNES and CARLTON, JJ.
BARNES, J., for the Court.
¶ 1. Gregory Johnston filed a complaint in the Circuit Court of Hinds County, Mississippi, alleging John Palmer and Gulf South Capital, Inc. were liable for a gross and intentional breach of contract and fraudulent misrepresentation related to a brokerage agreement. Palmer and Gulf South filed a motion for declaratory judgment, motion to dismiss and/or a motion for summary judgment which was granted by the trial court with prejudice. Johnston appeals from that judgment and argues that the motion for summary judgment should have been denied as there were genuine issues of material fact present and, therefore, there should be no judgment as a matter of law. We find, upon review, that there were no genuine issues of material fact present and affirm the trial court's grant of summary judgment.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In June 2004, Gregory Johnston was contacted by Mark Walenczyk, who was seeking potential investment opportunities in local businesses on behalf of his father-in-law, James Palmer, and James's brother, John Palmer. At the time, Johnston was a member of the law firm, Adams & Edens, P.A. in Brandon, Mississippi. The founding members of the firm, Lem Adams and Frank Edens, also owned a separate business, U.S. Legal Forms, Inc. (USLF) which offered legal information, products, and document services over the Internet. Johnston, aware that Adams and Edens had previously considered offers from parties interested in purchasing USLF, informed Walenczyk that USLF would be a good investment opportunity. Walenczyk informed James and John Palmer about USLF and, as a result, they requested a meeting with Johnston to obtain more information.
¶ 3. Later that month, Johnston, Walenczyk, James and John Palmer met at James's office in Jackson, Mississippi to discuss USLF. Johnston shared with them *590 his general knowledge regarding the company, and there was discussion regarding the possibility of the Palmer brothers buying a portion or all of USLF's business assets. Walenczyk asked Johnston to co-ordinate a meeting with Adams and Eden to discuss the venture. It was at this time that Johnston informed Walenczyk that, in consideration for his identifying the business opportunity and facilitating the potential transaction, Johnston desired a commission as broker. Walenczyk asked Johnston to draft an agreement, and Walenczyk would present it to the Palmers. Johnston drafted a two-page Brokerage Agreement (Agreement) among himself and John Palmer, JYP, LLC,[1] and James Palmer (Clients). According to the terms of the Agreement, Johnston agreed to act on behalf of the Clients as a broker to facilitate a potential transaction with USLF. The Agreement also specified that Johnston would receive a commission of three percent of the total consideration paid by the Clients to any and all shareholders of USLF upon the completion of the transaction. The Agreement, together with a confidentiality agreement, was signed by both James and John Palmer.
¶ 4. On June 21, 2004, Johnston met with Adams and Edens to discuss a potential buyer for USLF, although at this time, Johnston did not disclose the identities of the interested buyers. Adams and Edens informed Johnston that, due to prior negative experiences with potential buyers, they were not entertaining offers. However, Johnston, due to his relationship with Adams and Edens, persuaded them to meet with his Clients. In addition, Johnston had Adams and Edens sign a "conflict of interest notice" letter as well as a confidentiality agreement.
¶ 5. On July 1, 2004, a meeting was held among the parties at the offices of USLF in Brandon, Mississippi. In attendance at the meeting were Johnston, Adams, Edens, John Palmer, James Palmer, Walenczyk and Justin McClure, president of Gulf South Capital (Gulf South).[2] As a result of the meeting, the parties agreed there was mutual interest in the business transaction, and Edens agreed to assemble and provide the Clients with more information on USLF. During the month of July 2004, Johnston assisted Edens in the preparation of financial information relating to USLF, and employees of Gulf South became actively involved in the review of the financial material. It was also during this time that Johnston ceased his partnership with Adams and Edens in order to relocate his law practice to Madison, Mississippi.
¶ 6. Johnston made several attempts to set up another meeting for August 2004, but John Palmer indicated that he desired to meet with Adams and Edens alone and did not require Johnston's presence. It was at this point John Palmer and Gulf South started to manage the negotiations with USLF and deal directly with Adams and Edens. From this point forward, James Palmer and Walenczyk were no longer involved in the negotiation or transaction. On September 1, 2004, Johnston sent an e-mail to John Palmer (hereafter "Palmer") and several employees of Gulf South requesting an update on the transaction and indicating his willingness to assist them and fulfill his duties as outlined in the Agreement. However, assistance was not requested by Palmer or Gulf *591 South, and after September 20, 2004, they ceased to communicate with Johnston.
¶ 7. On March 18, 2005, a "Stock Purchase and Option Agreement" was signed and entered into by USlegal, Inc. (USL) and Palmer, individually.[3] Palmer agreed to invest $1,000,000 in USL, which was incorporated in February 2005 as a holding company for the assets of USLF. Adams and Edens were the sole stockholders of USL. In consideration of the investment, Palmer received ten percent in the newly issued and outstanding shares of stock in USL. Palmer also received an option to purchase additional shares within a stated period of time. Upon learning of the transaction, Johnston contacted Gulf South and requested payment of a brokerage commission as per the Agreement. After two separate meetings with Gulf South, Johnston was informed that Palmer would not pay the commission as no monies or consideration were paid directly to Adams or Edens.
¶ 8. Johnston filed a complaint in the Circuit Court of Hinds County, Mississippi, on May 23, 2005, alleging that Palmer and Gulf South were liable for a gross and intentional breach of contract and fraudulent misrepresentation related to the Agreement. Palmer and Gulf South filed a motion for declaratory judgment, motion to dismiss and/or a motion for summary judgment on June 24, 2005. They also produced several documents, including the Stock Purchase Agreement between Palmer and USL. These documents were given to the court for in camera inspection only.[4] On February 23, 2006, the trial court granted summary judgment for Palmer and Gulf South, dismissing all counts with prejudice. Specifically, the trial court found that Gulf South was not a party to the Agreement, and Johnston failed to show that any duty was owed to him by Gulf South. Additionally, based on the information contained in the pleadings and affidavits, there was no genuine issues of material fact that any consideration was owed under the Agreement to Johnston. It is from the judgment that Johnston now appeals.
I. WHETHER THE TRIAL COURT ERRED IN GRANTING PALMER AND GULF SOUTH'S MOTIONS FOR SUMMARY JUDGMENT.
¶ 9. "When reviewing a trial court's grant of summary judgment, our standard of review is de novo." Webb v. Braswell, 930 So.2d 387, 395(¶ 12) (Miss.2006). Evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, after a review of the evidence, the moving party is entitled to judgment as a matter of law, summary judgment should be entered in his favor. McCullough v. Cook, 679 So.2d 627, 630 (Miss.1996).
¶ 10. A motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure "tests the notion of well-pled facts and requires a party to present probative evidence demonstrating triable issues of fact." Children's Med. Group, P.A. v. Phillips, 940 So.2d 931, 934(¶ 7) (Miss.2006) (quoting Stuckey v. Provident *592 Bank, 912 So.2d 859, 865-66(¶ 10) (Miss. 2005)).
Those who practice before our trial courts are well advised to respond to summary judgment motions with affidavits, deposition testimony, responses to discovery, and other evidence approved by Rule 56, allowing our trial judges a fair look at whether triable issues of material fact exist. As the rule specifically provides, parties may not simply rely on their pleadings, nor may they escape summary judgment by outlining what they might discover later.
Franklin Collection Serv. v. Kyle, 955 So.2d 284, 291(¶ 24) (Miss.2007). Rule 56 does not provide for evidence which might be introduced or developed at trial. The non-moving party must produce any such evidence in opposition to the motion. Commercial Bank v. Hearn, 923 So.2d 202, 210(¶ 25) (Miss.2006). "It is thus incumbent upon a plaintiff to respond to a motion for summary judgment by demonstrating material factual disputes." Id. However, Mississippi Rules of Civil Procedure Rule 56(f) states:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
¶ 11. This Court will only reverse a trial court's decision to grant summary judgment if triable issues of fact exist. Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1041(¶ 8) (Miss.2003). Therefore, we must address Johnston's individual issues of error to determine if genuine issues of material fact exist in this case.
II. WHETHER THE TRIAL COURT ERRED IN FINDING THERE WAS NO GROSS AND INTENTIONAL BREACH OF CONTRACT BY PALMER
¶ 12. The Agreement between Johnston and Palmer stated,
Clients agree to pay to Broker for his services a commission equal to three percent (3%) of the total consideration paid by Clients to any and all shareholders of U.S. Legal Forms at the completion of this transaction. In the event that Clients do not finalize this transaction, a closing does not occur, and no consideration is paid to any of the shareholders of U.S. Legal Forms, no commission will be owed to Broker by virtue of this Agreement.
Johnston asserts that, in its ruling that no commission was owed to him, the trial court focused on direct monies paid to shareholders, not consideration. Based on our review of the record, we do not agree. The trial judge used the term "consideration" extensively in his opinion and, in fact, assumed the investment by Palmer was consideration. However, the trial court's focus was more on to whom consideration was given and the literal meaning of the contract. When examining a contract, a court should first examine the four corners of the contract to determine how to interpret it. Rotenberry v. Hooker, 864 So.2d 266, 270(¶ 14) (Miss.2003) (citing McKee v. McKee, 568 So.2d 262, 266 (Miss. 1990)). In this instance, Johnston drafted the Agreement so as to make the commission payable only upon the closing of a transaction in which consideration was given to the shareholders of USLF. If a broker, by special agreement, makes his commission payable only upon a contingency or the happening of a condition precedent, there is no right to recovery unless that condition or contingency occurs. Hamilton v. Hopkins, 834 So.2d 695, *593 702(¶ 22) (Miss.2003).[5]
¶ 13. Johnston also argues that there were genuine factual issues regarding the intent of the parties which goes beyond the "four corner" analysis and that the trial court brought up the issue of intent. Again, we do not agree with this view. The trial court clearly stated "the focus is upon objective fact" and that the concern "is not nearly so much with what the parties may have intended." The only time the court referenced the parties' intent is when it stated that Johnston intended to limit his commission solely to consideration given to USLF. Johnston argues that this wording is only due to the fact that no other entity connected with USLF existed at the time of the Agreement. While Johnston is correct, we observe that "[w]here the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party." Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 111(¶ 11) (Miss.2005). We find, as did the trial court, that Johnston drafted the Agreement to encompass any and all buyers connected to Palmer, yet failed to apply that same possible scenario for the seller.[6] Additionally, we note that the scenario Johnston outlined in the Agreement was essentially one in which Palmer would buy USLF from Adams and Edens, not the purchase of certain stock in the holding company and joining the management as an employee, albeit the chief executive officer. Edens even testified in his affidavit that no shareholders of USLF or USL received any funds or compensation of any type. The testimony is that the one million dollars paid by Palmer was capital funding for the company, not consideration to the shareholders. While there may have been consideration given to USL, it was for the purpose of obtaining stock in the company as an investment, not a payment to Adams and Edens for the purchase of their shares in the company.
¶ 14. Therefore, we agree with the trial court's manner of review. "A reviewing court should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. The reviewing court is not at liberty to infer intent contrary to that emanating from the text at issue." Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752(¶ 9) (Miss. 2003). We find no error the in trial court's finding that there was no gross or intentional breach of the contract.
III. WHETHER THE TRIAL COURT ERRED IN FINDING NO BREACH OF GOOD FAITH AND FAIR DEALING BY PALMER AND GULF SOUTH.
¶ 15. Johnston alleges that Palmer used a "loophole" in the Agreement and structured the transaction in such a way that Johnston was circumvented and unable to obtain his commission. Johnston states that this action amounted to bad faith by Palmer and Gulf South. *594 "All contracts carry an inherent covenant of good faith and fair dealing." Ferrara v. Walters, 919 So.2d 876, 883(¶ 19) (Miss. 2005) (citing Cenac v. Murry, 609 So.2d 1257, 1272 (Miss.1992)). The Mississippi Supreme Court explained that, "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." Cenac, 609 So.2d at 1272. "`[B]ad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." Bailey v. Bailey, 724 So.2d 335, 338(¶ 9) (Miss.1998).
¶ 16. The Agreement stipulated in paragraph 1,
Broker shall have the exclusive right to act as a broker on behalf of the Clients for the purpose of facilitating the transaction contemplated with U.S. Legal Forms. Clients agree that they will not circumvent the Broker in this transaction. Nothing in this Agreement shall prevent Clients from engaging other professional advisors such as attorneys, accountants, consultants, or appraisers to assist them in this transaction.
Palmer admitted in his affidavit that, within a week or two after signing the Agreement with Johnston, he and Mr. Edens decided that it would be more "efficient" for Palmer to negotiate with USLF directly, without Johnston's assistance.[7] Palmer and Gulf South assert in their brief that Johnston never registered any "objection, opposition, or protest, either verbally or in writing, to Palmer's negotiating directly with the two shareholders of USLF." However, Mr. Johnston was not given any definitive notice, prior to the announcement of the transaction between Palmer and USL, that his services were not needed under the terms of the Agreement. Johnston was told by Palmer, through an attempt by Johnston to set up another meeting, that Palmer wished to meet with USLF alone. Johnston sent an e-mail to Palmer and Gulf South two months after the original meeting to get an update on the transaction and to re-iterate his willingness to perform under the Agreement. There was no communication between Palmer and Johnston after September 20, 2004, until Johnston learned of the deal with USL in March 2005.
¶ 17. Under the duty of good faith and fair dealing, a party has a duty "not only to refrain from hindering or preventing the occurrence of conditions of his own duty or the performance of the other party's duty, but also to take some affirmative steps to cooperate in achieving these goals." Cenac, 609 So.2d at 1272. Had Palmer refused to pay Johnston's commission due to his failure to participate in the negotiations, the non-circumvent clause and duty of good faith would prevent Palmer's reliance on the Agreement, as he kept Johnston "out of the loop" in Palmer's negotiations with the shareholders of USLF. Palmer's failure to pay the commission, however, was based solely on the fact that the deal, as structured, did not fall within the narrow parameters of the Agreement drafted by Johnston. Johnston has cited no authority for the proposition that either the duty of good faith or the non-circumvent clause required Palmer to structure the deal with USLF so as to entitle Johnston to a commission under the terms of the Agreement. Nor did Johnston present any affidavits or evidence setting forth any specified facts that the formation of the holding company, USL, was done for the sole reason of *595 negating Palmer's responsibility to pay Johnston's commission.[8] The trial court noted that while such allegations might survive a motion to dismiss under Rule 12(b)(6), M.R.C.P, "it is insufficient to withstand Palmer's Rule 56 motion for summary judgment."
¶ 18. While it may seem unfair for Palmer to have been introduced to the business opportunity by Johnston and now rely on the literal interpretation of the Agreement so as to deny payment of a commission to him, we are mindful of the fact that Johnston was the sole drafter of the Agreement and, as such, controlled the its terms. We find, as did the trial court, that no genuine issue of material fact exists that Palmer or Gulf South breached the duty of good faith and fair dealing under the terms of the Agreement.
IV. WHETHER THERE WAS FRAUD AND MISREPRESENTATION ON THE PART OF PALMER AND GULF SOUTH.
¶ 19. Johnston claims that Palmer and Gulf South falsely promised to pay him a commission in exchange for his identification of the investment opportunity and used his relationship with Adams and Eden to give them a more advantageous position as buyer. Appellate courts are normally reluctant to sustain summary judgments in matters involving allegations of fraud. McGee v. Swarek, 733 So.2d 308, 312(¶ 13) (Miss.Ct.App.1998). Nonetheless, the Mississippi Supreme Court has affirmed grants of summary judgments in fraud cases where the court was satisfied that a jury applying a clear and convincing evidence standard to the known facts could not reasonably find a fraud to have been committed. Id. The Mississippi Supreme Court has stated that:
a party alleging fraud or misrepresentation must prove the following elements by clear and convincing evidence: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.
Great Southern Nat'l Bank v. McCullough Environmental Services, Inc., 595 So.2d 1282, 1288-89 (Miss.1992); see, e.g., Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983).
¶ 20. The trial court noted that Johnston presented no evidence that Palmer or Gulf South intended, at the signing of the Agreement, to defraud Johnston. Johnston defends this by stating that his inability to conduct proper discovery and view the Stock Purchase agreement created an "impossible burden" upon him to prove all the elements by clear and convincing evidence. However, Rule 56 specifically states that "parties may not simply rely on their pleadings, nor may they escape summary judgment by outlining what they might discover later." Franklin Collection Serv., 955 So.2d at 291(¶ 24). A trial judge's decision concerning a motion related to discovery are reviewed for abuse of discretion. Miss. Ins. Guar. Ass'n v. MS Cas. Ins. Co., 947 So.2d 865, 876(¶ 28) (Miss.2006). "[T]he decision to . . . order further discovery rests within the sound discretion of the trial judge and will not be reversed unless his decision can be characterized as an abuse of discretion." Id. (quoting Marx v. *596 Truck Renting & Leasing Assocs., 520 So.2d 1333, 1344 (Miss.1987)). Although Johnston vigorously argues that his inability to view the stock purchase agreement and conduct additional discovery was error, we note that he failed to file any motion for relief on that issue in the trial court. A party who opposes a motion for summary judgment may not rely on vague assertions that discovery will produce needed, but unspecified, facts. McQueen v. Williams, 587 So.2d 918, 923 (Miss. 1991). Johnston filed no motion to compel discovery, nor did he file a motion for time under Rule 56(f) for additional discovery. "A party opposing a motion for summary judgment may request a continuance in order to conduct further discovery pursuant to Miss. R. Civ. Proc. 56(f)." Owens v. Thomae, 759 So.2d 1117, 1120(¶ 11) (Miss. 1999). The record reflects that Johnston only submitted a response in opposition to the motion for summary judgment. Since Johnston did not utilize Rule 56(f) to request additional time for discovery, the circuit court's grant of summary judgment was not premature. Johnston failed to raise a genuine issue of material fact as to any fraud and/or misrepresentation by Palmer and Gulf South; therefore, we find no error.
V. WHETHER PALMER AND GULF SOUTH WERE LIABLE UNDER THEORIES OF QUANTUM MERUIT AND UNJUST ENRICHMENT.
¶ 21. Johnston asserts that Palmer and Gulf South are liable to him for his services and have been unjustly enriched by accepting and using his services to further their business relationships without paying due consideration. Johnston supports this theory by the fact that Gulf South employees told him that Palmer did not even know what the Agreement said at the time he signed it. He asserts that, if these facts were true, the Agreement may be subject to recision or rendered void. However, as we have already indicated, "[t]o permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." Alliance Trust Co. v. Armstrong, 185 Miss. 148, 163-64, 186 So. 633, 635 (1939). "[E]very person must be presumed to know the law, and in absence of some misrepresentation, or illegal concealment of facts, the person must abide the consequences of his contracts and actions." Farragut v. Massey, 612 So.2d 325, 329 (Miss.1992). Palmer was an astute businessman, and we find, as did the trial court, that the contract was binding and valid as to both parties. Palmer has also agreed to be bound by the terms of the Agreement. Recovery under quantum meruit may be premised either on express or implied contract, and a prerequisite to establishing grounds is the claimant's reasonable expectation of compensation. Estate of Johnson v. Adkins, 513 So.2d 922, 926 (Miss.1987). Parties may not simply abandon a contract and resort to quantum meruit. Redd v. L & A Contracting Co., 246 Miss. 548, 556, 151 So.2d 205, 208 (1963).
¶ 22. "To collect under an unjust enrichment or quasi-contract theory, the claimant must show `there is no legal contract but . . . the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.'" Ellis v. Anderson Tully Co., 727 So.2d 716, 719(¶ 25) (Miss.1998) (quoting Hans v. Hans 482 So.2d 1117, 1122 (Miss.1986)). There is no question that a legally binding, written contract existed *597 between Johnston and Palmer. Therefore, damages based on claims of unjust enrichment are not an appropriate remedy. We affirm the trial court's grant of summary judgment on this issue.
VI. WHETHER THE TRIAL COURT ERRED IN GRANTING GULF SOUTH'S MOTION FOR SUMMARY JUDGMENT FINDING IT WAS NOT A PROPER PARTY TO THIS ACTION.
¶ 23. The trial court, in its final judgment, addressed the issue of Gulf South's motion for summary judgment as a matter of law, finding that Gulf South had no obligation under any contract to Johnston, and the motion for summary judgment should be granted. Gulf South was not a party to the Agreement entered into by Johnston and Palmer. Johnston argues that since he had not been made privy to information contained in the stock purchase agreement, dismissing Gulf South from the suit was improper until discovery could be conducted to determine their involvement. Additionally, Johnston stated that Gulf South is a party to the Agreement under Paragraph 4 which we restate:
Clients agree to pay the commission to Broker described in paragraph 3 above in the event that the transaction contemplated herein with U.S. Legal Forms is consummated with any natural person, agent, assignee, employee, or entity that is not enumerated in this agreement, but is in any way affiliated with or may be associated with Client.
However, we agree with the trial court that there was no evidence presented which made Gulf South a party to the Agreement. The paragraph in the Agreement only pertains to those entities which are parties to the stock purchase agreement, which still confers no liability on the entity to pay the commission. That duty is still owed by the Clients to the Agreement, and Gulf South is not one of them. We, therefore, affirm the trial court's grant of summary judgment to Gulf South.
VII. WHETHER THE TRIAL COURT INDEPENDENTLY CREATED FINDINGS OF FACT NOT CONTAINED IN THE RECORD, AND NOT IN A LIGHT MOST FAVORABLE TO THE PLAINTIFF.
¶ 24. When considering a motion for summary judgment, a trial court must view all evidence in a light most favorable to the non-moving party. Bowie, 861 So.2d at 1041. Johnston argues that the trial court made several statements in its judgment that were not contained in the record and were independent assumptions by the court. Specifically, Johnston states that the trial judge's statements about Johnston's legal expertise as an "experienced, practicing attorney" subjected him to a higher level of scrutiny by the trial court and was in "direct opposition to the deference required by Rule 56."
¶ 25. We are bound to respect a lower court's findings of fact when they are supported by reasonable evidence in the record and are not manifestly wrong. Byrd v. Bowie, 933 So.2d 899, 904(¶ 14) (Miss.2006). We find reasonable evidence from our review of the record that Johnston was an experienced legal practitioner, even though he states that he was not, at the time, employed as such.[9] Therefore, we find the trial court's finding of fact were supported by the evidence, and there *598 is no merit to Johnston's claim of error on this issue.
VIII. WHETHER JOHNSTON IS LIABLE FOR ATTORNEYS' FEES.
¶ 26. Palmer and Gulf South cross-appeal in their reply brief that the claims asserted by Johnston are frivolous and, as such, he should be held liable for their attorney's fees and costs and/or sanctions pursuant to Mississippi Code Annotated section 11-55-1, under Rule 11 of the Mississippi Rules of Civil Procedure, and/or by the "inherent power of this Court."
¶ 27. The issue of whether to award attorney's fees falls within the sound discretion of the trial court. Browder v. Williams, 765 So.2d 1281, 1287(¶ 34) (Miss.2000). Under Rule 56(h), if summary judgment is denied, a trial court "shall award to the prevailing party the reasonable expenses incurred in attending the hearing of the motion and may, if it finds that the motion is without reasonable cause, award attorneys' fees." Southwest Miss. Regional Medical Ctr. v. Lawrence, 684 So.2d 1257, 1264-1265 (Miss.1996). However, in the case before us, summary judgment was granted and therefore, this section of the rule is not applicable. As the parties did not expressly address the issue of attorneys' fees in the Agreement,[10] we find the trial court's failure to award attorney's fees in the case was not an abuse of discretion.
¶ 28. Our review of whether the imposition of sanctions is warranted under Rule 11 is an abuse of discretion standard. Eatman v. City of Moss Point, 809 So.2d 591, 593(¶ 6) (Miss.2000). Under M.R.C.P. 11(b), a court may award reasonable expenses and attorneys' fees against a party or his attorney, or both, whose pleading or motion (1) is frivolous or (2) is filed for the purpose of harassment or delay. "[A] pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success." Id. (quoting Tricon Metals & Services, Inc. v. Topp, 537 So.2d 1331, 1336 (Miss.1989)). "Though a case may be weak or `light-headed,' that is not sufficient to label it frivolous." Leaf River Forest Prods. v. Deakle, 661 So.2d 188, 195 (Miss.1995). The trial court found no basis for sanctions or monetary damages and neither do we. We decline the invitation to make an award of attorneys' fees and sanctions under the present circumstances and hold that the trial court did not abuse its discretion in refusing to award attorney's fees in this case and deny the cross-appeal.

CONCLUSION
¶ 29. Issues of fact exist where more than one reasonable interpretation may be given to undisputed testimony, "where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial court cannot say with reasonable confidence that the full facts of the matter have been disclosed." Yowell v. James Harkins Builder, Inc., 645 So.2d 1340, 1345 (Miss.1994). Based on the evidence in the record before us, we find that the trial court properly granted summary *599 judgment, and Johnston's assignments of error without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] JYP, LLC was a Mississippi limited liability company that James Palmer owned and used as an investment vehicle.
[2] Justin McClure is also John Palmer's son-in-law. Gulf South Capital, Inc. is a corporation wholly owned by John Palmer.
[3] Gulf South was not a party to the stock purchase agreement and has no ownership interest in USL.
[4] We note here that the stock purchase agreement between Palmer and USL, which was presented to the trial court under seal, has never been viewed by Johnston, nor is it included in the record before this Court. However, the trial court's judgment contained only information contained in the pleadings and affidavits, not the stock purchase agreement.
[5] Even more fatal to Johnston's claim for commission under the terms of the Agreement is the fact that the Agreement was for facilitating the "purchase of a portion or all of U.S. Legal Forms' business assets" which did not occur.
[6] Paragraph 4 of the Agreement stated:

Clients agree to pay the commission to Broker described in paragraph 3 above in the event that the transaction contemplated herein with U.S. Legal Forms is consummated with any natural person, agent, assignee, employee, or entity that is not enumerated in this agreement, but is in any way affiliated with or may be associated with Client.
[7] Edens and Adams were both aware of Johnston's role as broker since they both signed a conflict of interest letter stating they were "amenable" to Johnston acting as broker on behalf of Palmer.
[8] Edens, in his affidavit, stated that, although he was aware of the Agreement between Johnston and Palmer, he had no knowledge of the terms or conditions.
[9] Johnston maintains that he was not "even in practice at the time the agreement was drafted." We are unsure as to the veracity of this statement as Johnston testified that he opened his own law firm shortly after leaving Adams and Edens.
[10] Parties may, by contract, provide that in the event of a dispute the losing party will pay the prevailing party reasonable attorneys' fees. Tupelo Redevelopment Agency v. Abernathy, 913 So.2d 278, 289(¶ 31) (Miss.2005).