GRIFFIS, P.J.,
for the Court:
¶ 1. This case concerns the appeal of a summary judgment granted in favor of the defendant.
*493 ¶2. The plaintiffs were current or former employees of the Booneville Housing Authority (“BHA”). Christopher Jones, Vicki Cole, Richard Cole, Debbie Bishop, Kenneth Bishop, Dewell Smith, and Roosevelt Spencer (collectively referred to as the “plaintiffs”), brought a lawsuit against Brenda Jo Mullen d/b/a Mullen and Company CPA. The plaintiffs asserted claims for defamation, tortious interference with contractual relations, and intentional infliction of emotional distress. Mullen filed a motion for summary judgment, and the circuit court dismissed the plaintiffs’ claims because they failed to present evidence that Mullen’s statements involved unprivileged publication or were made with actual malice or in bad faith.
¶ 3. On appeal, the plaintiffs argue that the circuit court erred in granting summary judgment: (1) on the defamation claim because it found Mullen’s statements were privileged; (2) when it found Mullen’s statements were not made with actual malice or bad faith; (3) on the claim for tortious interference with contractual relations; and (4) on the claim for intentional infliction of emotional distress. We affirm the circuit court’s decision.
FACTS
¶ 4. In 2007, BHA was concerned that its employees and contractors were the cause of financial losses and possibly fraud. BHA entered a contract with Mullen, a Certified Public Accountant, to investigate and prepare a confidential fraud examination report. (The plaintiffs refer to this as a forensic audit.) Mullen conducted an investigation. But, Mullen was not given full access to all the information she requested. Based on the information she obtained, Mullen completed her investigation and completed a report.
¶ 5. In October of 2007, Mullen presented her report to a BHA Board of Commissioners meeting. In this meeting, Mullen provided each Board member with a numbered copy of a draft report. At the end of the meeting, Mullen collected every copy of the draft report. The BHA Board instructed Mullen to finish her investigation, finalize the report, and reference any violated statutes. Mullen did so. At the end of the month, Mullen provided the BHA Board with a final report.
¶6. Thereafter, the BHA Board instructed Mullen to provide a copy of the report to various authorities. The record does not contain a letter from Mullen distributing the report. Instead, the record contains a document signed by the Chairman of the BHA Board that indicates that Mullen’s final report was sent to the District Attorney, the Attorney General, the Assistant U.S. Attorney for the Mississippi Northern Division, the Mississippi State Department of Public Audit, BHA’s insurance carrier’s claims division, the Mississippi State Board of Certified Public Accountants, the HUD Office of Inspector General, the HUD State Office, and the Mayor of Booneville.
¶ 7. In 2008, the plaintiffs filed their complaint in the Prentiss County Circuit Court. The complaint alleged that the report contained false and defamatory statements about each of the plaintiffs. In 2010, the case was transferred to the Madison County Circuit Court because the contract between Mullen and BHA contained a forum-selection clause.
¶ 8. For almost twenty months, from the date the complaint was filed to the date the case was transferred, the plaintiffs conducted no discovery. The plaintiffs did not serve any interrogatories or requests for production of documents, nor did they notice any depositions. On January 11, 2011, Mullen filed a motion for a judgment on the pleadings. Subsequently, the circuit court continued a hearing on Mullen’s *494 motion for a judgment on the pleadings for two months until May 9, 2011, so that the plaintiffs could conduct additional discovery. The plaintiffs then served Mullen one set of interrogatories with two interrogatories and one set of requests for production of documents, which contained only one request.
¶ 9. Mullen filed her motion for summary judgment on April 20, 2011. The plaintiffs did not attach any affidavits or other affirmative proof to their response to the motion for summary judgment. The hearing on the motion for summary judgment, instead of the motion for a judgment on the pleadings, was held on May 9, 2011. The same day, the circuit court granted Mullen’s motion for summary judgment and dismissed the plaintiffs’ claims with prejudice.
STANDARD OF REVIEW
¶ 10. The standard of review of an order granting summary judgment is de novo. PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 49 (¶ 8) (Miss.2005) (citing Hurdle v. Holloway, 848 So.2d 183, 185 (¶ 4) (Miss.2008)). It is well settled that “[a] summary judgment motion is only properly granted when no genuine issue of material fact exists. The moving party has the burden of demonstrating that no genuine issue of material fact exists within the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.” Id. (internal citations and quotations omitted).
¶ 11. We “will only reverse a trial court’s decision to grant summary judgment if triable issues of fact exist.” Johnston v. Palmer, 963 So.2d 586, 592 (¶ 11) (Miss.Ct.App.2007). Once the movant has, by pleading, affidavit, or admissions, established the absence of a genuine issue of material fact, the burden shifts to the non-movant to show specific facts that there is a genuine issue for trial. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss.1986).
ANALYSIS

1. Whether the circuit court erred in granting summary judgment on the plaintiffs’ defamation claim because Mullen’s statements were privileged.

¶ 12. To prove defamation under Mississippi law, the plaintiffs must demonstrate the following elements:
(a) a false statement that has the capacity to injure the plaintiff’s reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) “either actionability of statement irrespective of special harm or existence of special harm caused by publication.”
Speed v. Scott, 787 So.2d 626, 631 (1121) (Miss.2001) (citation omitted). In this section of our opinion, we only address “an unprivileged publication, i.e., communication to a third party” because the plaintiffs have failed to demonstrate a question of fact as to this element.
¶ 13. To support her motion, Mullen argued that she cannot be liable for the subsequent publication by others when she did not make any unprivileged publication to third parties. The plaintiffs argue that Mullen’s statements were not privileged because they were excessively published.
¶ 14. A communication “is privileged if [it was] made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be [libelous],” and if it was “made in good faith and on a subject-matter in which the person making it has an interest,” and if it was “made without malice.” Smith v. White, 799 *495 So.2d 88, 86 (¶ 7) (Miss.2001). We address bad faith and malice in the second issue.
¶ 15. The supreme court found in Eckman v. Cooper Tire & Rubber Company, 898 So.2d 1049, 1053 (¶¶ 11-12) (Miss.2005), that communications between an independent review company, Cooper Tire, and a physician’s clinic were communications “within the ‘circle’ of those people who [had] a legitimate and direct interest in the subject matter of the communication.” Because those communications were “within the circle,” the supreme court held the plaintiff there did not meet the publication element of the defamation claim. Id.
¶ 16. The “circle” has been extended. A law-enforcement organization that has a legitimate and direct interest in the subject matter is also “within the circle” of privileged communications, not constituting publication. See Downtown Grill, Inc. v. Connell, 721 So.2d 1113, 1119 (¶¶ 19-24) (Miss.1998); see Howell v. Operations Mgmt. Int’l Inc., 161 F.Supp.2d 713, 717 (N.D.Miss.2001).
¶ 17. BHA hired Mullen to conduct a financial investigation. She was hired to investigate and report any inappropriate findings or fraud. Mullen did so and reported her findings to BHA. Certainly, BHA had an interest in the communication even though it may have “contain[ed] matter[s] which without this privilege would be [libelous].” White, 799 So.2d at 86 (¶ 7). Further, the law-enforcement agencies and other entities that BHA sent the report to, or authorized the sending of the report to, were “within the ‘circle’ of those people who [had] a legitimate and direct interest in the subject matter of the communication.” Eckman, 893 So.2d at 1053 (¶ 11). The subject matter of the communication was possible fraud perpetuated on a governmental agency by its own employees.
¶ 18. The plaintiffs admit in their brief that Mullen’s report is subject to a qualified privilege. The plaintiffs argue that the privilege does not protect defamatory statements where there is excessive publication. The plaintiffs argue, however, that the District Attorney, the Attorney General, the Assistant U.S. Attorney for the Mississippi Northern Division, the Mississippi State Department of Public Audit, BHA’s insurance carrier’s claims division, the Mississippi State Board of Certified Public Accountants, the HUD Office of Inspector General, the HUD State Office, and the Mayor of Booneville are not within the circle of those people who have a legitimate and direct interest in possible fraud on BHA by BHA employees. Each of the offices and entities listed above certainly appear to have a legitimate interest in the subject matter of the report.
¶ 19. The plaintiffs also allege that one or more of these persons or entities disclosed part of the report’s findings, which allowed part of the report to be published in a local newspaper. The plaintiffs do not allege that Mullen disclosed the report to any person or entity other than the officials or agencies that are listed above. BHA directed her to disclose the report to each of these officials or agencies. The plaintiffs have cited no authority to support their argument that Mullen should be held hable for publication by others when Mullen did not make any unprivileged publication to third parties who were outside of “the ‘circle’ of those people who [had] a legitimate and direct interest in the subject matter of the communication.” Eckman, 893 So.2d at 1053 (¶ 11).
¶ 20. Accordingly, the plaintiffs submitted no evidence that created a genuine issue of material fact as to this issue. The plaintiffs have failed to bring forth facts that established the existence of an essen *496 tial element of their case, that Mullen’s report was “an unprivileged publication, i.e., communication to a third party.” Speed, 787 So.2d at 631 (¶ 21). Therefore, we find no merit to this issue.

2. Whether the circuit court erred when it found Mullen’s statements were not made with actual malice or bad faith.

¶ 21. The plaintiffs also were required to establish “actual malice” to demonstrate a genuine issue. See Eckman, 893 So.2d at 1058-54 (¶¶ 13-14). Actual malice means the statement was made “with knowledge that it was false or with reckless disregard of whether it was false or not.” N.Y. Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
¶ 22. The plaintiffs argue that the issue of whether Mullen knew her statements were false or made those statements in reckless disregard of the truth is a question for the jury and cannot be summarily resolved by the circuit court. Since this case is before us as a motion for summary judgment, under Mississippi Rule of Civil Procedure 56, we must only decide whether there is a genuine issue of a material fact in dispute. To get to the jury, the plaintiffs must first establish that there is a question of fact in dispute that Mullen acted with actual malice. Here, the plaintiffs have offered no evidence that would demonstrate actual malice sufficient to defeat Mullen’s qualified privilege.
¶23. If Mullen “honestly believed the plaintiff[s’] conduct to be such as [s]he described it, the mere fact that [s]he used strong words in describing it is no evidence of malice.” Eckman, 893 So.2d at 1053 (¶ 13). Even if the plaintiffs were to allege that Mullen’s report was “angry and intemperate,” that would not be enough. Id.
¶ 24. The plaintiffs’ brief devotes several paragraphs to the argument that they would have been able to prove actual malice if they could have deposed Mullen. The plaintiffs argue that the reason for the twenty-month delay in conducting discovery was that they had problems serving Mullen, and so Mullen did not file her answer until ten months after the complaint was filed. The plaintiffs argue that they were waiting to depose Mullen until after the Mississippi State Board of Accountancy finished their investigation of her.
¶ 25. The record does not support this argument. The plaintiffs had a sufficient period for discovery. The circuit court even allowed two more months for additional discovery before a summary-judgment motion was filed. This was in addition to the twenty months the plaintiffs already had to conduct discovery since they filed their complaint. The plaintiffs served no discovery and noticed no depositions during that twenty months.
¶ 26. If the plaintiffs needed more time for discovery to prove malice, they could have filed a motion under Mississippi Rule of Civil Procedure 56(f). Then, the plaintiffs would have had to present specific facts as to why they could not oppose the motion for summary judgment. Owens v. Thomae, 759 So.2d 1117, 1120 (¶ 12) (Miss.1999). Additionally, the plaintiffs would have had to specifically demonstrate how postponement of a ruling on the motion would enable them to rebut Mullen’s showing of an absence of a genuine issue of material fact. Id. However, the plaintiffs filed no motions and no affidavits showing that additional discovery was needed.
¶ 27. The plaintiffs argue that their response to the motion for summary judgment was, in substance, partially a Rule 56(f) motion. However, in their response, *497 they only state the following regarding their alleged inability to conduct discovery:
Plaintiffs feel confident that they would be able to prove Mullen acted with actual malice if they were afforded an opportunity to depose her and conduct other discovery in this matter. Not surprisingly, the defendant requests this Court dismiss this case in its entirety prior to affording the plaintiffs an opportunity to conduct discovery, but she has failed to provide the Court with any good reason to grant such a request or any case law supporting it. Therefore, this Court should deny defendant’s motion for summary judgment on plaintiffs’ defamation claims.
[[Image here]]
[T]he defendant is asking this Court to summarily dismiss the plaintiffs’ case without ever affording them an opportunity to prove it. Dismissing the plaintiffs’ case without ever affording them an opportunity to question the defendant regarding the alleged factual basis for her defamatory statements would be both inequitable and wholly unsupported by the case law in this state.
¶28. “[T]he party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the possession of the other party.” Owens, 759 So.2d at 1120 (¶ 12). The plaintiffs failed to demonstrate any specific facts as to why they could not oppose the motion for summary judgment. The plaintiffs repeatedly stated they were not afforded the opportunity to conduct discovery, but they never offered any specific facts as to why they allegedly could not conduct discovery.
¶ 29. On appeal, the plaintiffs make an additional argument as to why they did not conduct discovery on actual malice. They claim that the trial court’s order limiting discovery to issues related to the alleged publication did not enable them to pursue the actual-malice issue. The issue of whether Mullen acted with malice- when she published her report fits within the trial court’s order on “issues related to the alleged publication.” The plaintiffs’ failure to pursue discovery was due to their own choices and mistaken assumptions, not a limitation by the circuit court.
¶ 30. The plaintiffs offered no evidence to dispute the facts from Mullen’s responses to interrogatories. Mullen stated that she “did not knowingly make any false statements in the reports” and “did not instruct or encourage any individual to distribute or publish any version or draft of the confidential report to any third party.”
¶31. We find that the circuit court correctly granted summary judgment based on the finding that the plaintiffs failed to set forth any evidence that the report was made with actual malice and in bad faith. Therefore, we find no merit to this issue.

3. Whether the circuit court erred by granting summary judgment on the plaintiffs’ claim for tortious interference with contractual relations.

¶ 32. Mississippi law recognizes a claim for interference “with the performance of a contract between another and a third party” by one “who intentionally and improperly interfered,” and this interference causes “the third party not to perform.” Morrison v. Miss. Enter. for Tech., Inc., 798 So.2d 567, 574 (¶ 23) (Miss.Ct.App.2001) (citing Shaw v. Burchfield, 481 So.2d 247, 254-55 (Miss.1985)). Interference with at-will employment is capable of recovery. Id.
¶ 33. “[O]ne occupying a position of responsibility on behalf of another is privileged ... to interfere with his princi *498 pal’s contractual relationship with a third person,” as long as she is acting “within the scope of that responsibility and absent bad faith.” Shaw, 481 So.2d at 255.
¶ 34. Mullen occupied a position of responsibility, acting on behalf of BHA. Mullen performed a fraud examination. In such capacity, Mullen was acting as an agent of BHA in her investigation. Thus, her report is privileged and does not constitute tortious interference.
¶ 35. In order to prove tortious interference with contractual relations, the plaintiffs must show the following elements:
1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred.
Levens v. Campbell, 733 So.2d 753, 760-61 (¶ 27) (Miss.1999).
¶ 36. Even if Mullen was not in a position of responsibility, the plaintiffs did not sufficiently allege a genuine dispute as to the element of bad faith. The plaintiffs incorrectly argue that the issue of whether Mullen made her statements in good faith is a question of fact for the jury. They alleged that there was no privilege because Mullen acted in bad faith. Of course, what is necessary on summary judgment is that the plaintiffs present affidavits or other evidence that goes beyond their pleadings and at least indicates the existence of an issue of material fact in dispute. The plaintiffs presented no such proof on the element of bad faith.
¶ 37. “[T]he ‘privilege’ is merely a specific example of having ‘right or justifiable cause’ to interfere with the relationship.” Morrison, 798 So.2d at 575 (¶ 28). This tort “is based on intermeddling—a tort occurs if without sufficient reason, one person intentionally interferes with another’s contract even if the interference is by giving information that is completely accurate, when the purpose was to cause interference and injury results.” Id. (emphasis added).
¶ 38. Mullen may have interfered with the plaintiffs’ contractual relationships with BHA by providing accurate information in her fraud examination report. However, what is required for this claim is that she intentionally provided the report to cause such interference with their contractual relationships. The plaintiffs presented no evidence beyond the allegations in their pleadings of any intent on Mullen’s part. Mullen was simply performing the task she was hired by BHA to do. Additionally, Mullen had a “right or justifiable cause” to interfere with the plaintiffs’ relationship with BHA because she was hired by BHA to investigate fraud and produce the report.
¶ 39. We find no evidence to support a genuine issue of a material fact in dispute that Mullen went beyond her privilege to investigate and engaged in malicious conduct directed at the plaintiffs. We agree with the circuit court that summary judgment was appropriate on the claim for tortious interference with contractual relations. Accordingly, we find no merit to this issue.

4. Whether the circuit court erred by granting summary judgment on the plaintiffs’ claim for intentional infliction of emotional distress.

¶40. A claim for intentional infliction of emotional distress requires conduct that is “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Langston v. Bigelow, 820 So.2d 752, 757 (¶ 11) (Miss. *499 Ct.App.2002) (internal citations and quotation marks omitted). We have previously stated in employment-dispute cases that “mere insults, indignities, threats, annoyances, petty oppression, or other trivialities” are not enough to support a claim for intentional infliction of emotional distress. Clark v. Luvel Dairy Prods., Inc., 821 So.2d 827, 831 (¶ 9) (Miss.Ct.App.2001) (internal citation and quotation marks omitted).
¶41. Once again, the plaintiffs have presented no evidence beyond their allegations of outrageous and extreme conduct that would rise to a level of an actionable claim for intentional infliction of emotional distress. They cite no legal authority to support a finding that one like Mullen, whose actions fulfilled a contractual obligation to BHA, would be liable for intentional infliction of emotional distress. Instead, the plaintiffs again argue that this issue should have been submitted to a jury. We find that the plaintiffs have failed to submit sufficient evidence to establish a genuine issue of a material fact in dispute. We agree with the circuit court that summary judgment was proper on the claim for intentional infliction of emotional distress. Therefore, we find no merit to this issue.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. CARLTON AND RUSSELL, JJ., CONCUR IN RESULT ONLY. IRVING, P.J., AND MAXWELL, J., NOT PARTICIPATING.